CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUL 2 0 2009

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| ROY V. ROBERTSON, | Case No. 5:08cv00056 |
| *Plaintiff* | REPORT AND |
| v. | RECOMMENDATION |
| MICHAEL J. ASTRUE, | By:  Hon. James G. Welsh |
| Commissioner of Social Security, | U. S. Magistrate Judge |
| *Defendant* | |

The plaintiff, Roy V. Robertson, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g). The Commissioner's Answer was filed on November 14, 2008 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. Both parties have moved for summary judgment and filed supporting memoranda. By order of referral entered April 29, 2009 this case is now before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **Summary Recommendation**

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## II. Case History and Evidence

This case has an extended procedural history; and it is now before the court for a second time. On each occasion, the plaintiff has sought the court's reversal of an administrative finding that he was engaged in "substantial gainful activity"[1] as the sole owner and operator of a turkey farm at the time his insured status expired.[2] *See Robertson v. Barnhart*, No 5:05cv00009 (WDVa, 2005).

The plaintiff protectively filed his application on October 28, 2002. (R.19,92,232.) Therein, and in his related submissions, the plaintiff alleged that he had worked as a truck driver for sixteen years; in 1997 he took-over ownership and operation of his family's farm in Highland County, and he operated the farm until March 29, 2001 when he became disabled due to significant degenerative lumbar disc disease and chronic hepatitis-C. (R.19-20,93,96,116-118,125-128,135, 325.) His DIB application was administratively denied, both initially and on reconsideration, and a hearing before

---

[1] Substantial gainful activity is defined in the agency's regulations as "work activity that involves doing significant physical or mental activities . . . even if it is done on a part-time basis or if [an individual does less, gets] paid less, or [has] less responsibility than when [the individual] worked before." 20 C.F.R. § 404.1572(a). It means "work that . . . involves doing significant and productive physical or mental duties . . . [and] is done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see also* 20 C.F.R. § 404.1572(b).

[2] The plaintiff's insured status expired on June 30, 2002. (R.19,23,96,279,298,325.)

2

an administrative law judge ("ALJ") was held on May 25, 2004. (R.19,32-33,36-38,72-78,224,227,232-252.)

The plaintiff was present, testified, and was represented by counsel. (R.19,34-35,227-265.) *Inter alia* he testified that after March 2001 he was no longer able to do strenuous farm work and Cathy Fairfield moved-in with him and took-over a substantial amount of the farm work. According to the plaintiff, he pays Ms. Fairfield wages, continued for some time thereafter to work "three to four" hours each day doing less physically demanding tasks and handling the "business end of it," and at the time of the hearing he continued to make the daily farm-related telephone calls and to work "between one and two hours" each day. (R.234-237,242-246,252.) Ms. Fairfield [3] testified that she has lived with the plaintiff since 2001, that she has taken-over increasing amounts of the farm work, and that she now does all of the physical work on the farm unless her son was there help. (R.253-255.)

Dr. Charles Cooke, a medical consultant also testified. (R.19,81-87,228,230,256-260.) Based on his review of the medical record, it was his opinion that the plaintiff's multi-level disc disease met listing § 1.04C [4] as of the alleged March 2001 disability onset date. (R.256-259.)

---

[3] According to the plaintiff's 2005 tax return, he is listed as married and filing jointly with his wife, "Catherine." (R.330-331,546-547.) Each identifies his or her occupation as "farmer" (R.330-331,546-547); however, the plaintiff is identified in Schedule F as the individual "materially participat[ing] in the production of turkeys (R.332,554).

[4] "*Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . . lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively . . . ." 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 1.04C.

3

In denying the plaintiff's claim at the first decisional step,[5] the ALJ reviewed the plaintiff's testimony, including the acknowledgment that he continued to participate actively in the "business end" of the farm; the ALJ took note of the documentary evidence, including the medical records which he described as "replete with references to ongoing work activity and operation of a farming business,"[6] and the ALJ took note of the plaintiff's annual tax form representation of his ongoing "material participation" in the business of the farm. (R.20-23,104,107,110,305,307-308.) After the Appeals Council declined to review the ALJ's decision (R.5-15), the plaintiff's instituted his first appeal to the district court.

Finding that the ALJ had failed to address the question of whether the plaintiff had received substantial income from his farming activities or was otherwise engaged in substantial gainful activities within the meaning of the agency's regulations, the district judge vacated the final administrative decision and remanded the case for further proceedings consistent with his opinion. (R.305-311.)

Following this remand, a second hearing was held before the ALJ on May 25, 2006. At which time the plaintiff again testified (R.289-293) and shortly thereafter provided the ALJ with

---

[5] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider: whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1; (4) has an impairment which prevents past relevant work; and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

[6] *See* R.307 footnote 2; *see also* R.21.

4

complete copies of his tax returns for the years 1995-2005. (R.330-588.) Although the plaintiff testified that he had engaged in full-time farm work only between 1997 and 2001 (R.290), the ALJ again concluded that the plaintiff had continued to engage in substantial farming/farm management activity through the date his insured status expired and was, therefore, ineligible for disability insurance benefits under Title II of the Act. (R.278-282.)

As the district judge noted in his memorandum opinion, the agency has three alternative regulatory tests by which to determine whether a self-employed individual is engaged in substantial gainful activity. (R.309.) The first provides that an individual has engaged in substantial self-employed work activity if he or she "render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i). Decisional use of this test, as the district judge also held, requires a two-pronged evaluation of whether the individual in fact has provided "significant services" and has received "substantial income" from the business. (*Id.*)

The alternative substantial gainful activity tests outlined in 20 C.F.R. § 404.1575 require consideration of the individual's work activities. One provides that an individual has engaged in substantial self-employed work activity where his or her "activity, in terms of factors such as hours, skills, energy output, efficiency, duties and responsibilities, is comparable to that of unimpaired individuals in the community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii). The other provides that an individual has engaged in substantial self-employed work activity where his or her "work activity, although not comparable

5

to that of unimpaired individuals, is clearly worth the amount shown in 20 C.F.R. § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the [same] work." 20 C.F.R. § 404.1575(a)(2)(iii).

As part of this decision-making process, in an appropriate case the agency's regulations direct the decision-maker also to consider any "supervisory, managerial, advisory or other significant personal services." provided by the self-employed individual. 20 C.F.R. § 404.1573(d). Similarly, where income alone is not determinative, the decision-maker is also directed to evaluate the individual's work activity on the basis of its value to the business regardless of whether any immediate income is received. 20 C.F.R. § 404.1575(a).

In accord with the district judge's remand order, the ALJ's June 8, 2006 decision directly addressed the "substantial income" prong of the first test, and it was the ALJ's conclusion that the plaintiff had failed to demonstrate that his farming and farm management activities did not constitute substantial gainful activity irrespective of the fact that the farm had a net operating loss each year during the relevant time period. In making this determination, the ALJ considered the fact that the plaintiff's farm income (loss) as reported on his tax returns, for the years 1998 through 2000 was "quite comparable" to his farm income (loss) for subsequent years. (R.281.) Among other things, as 20 C.F.R. §§ 404.1573(d) and 404.1575(a) direct, the ALJ also took note of the fact that 1999 was the only year the farm did not have a net operating loss, and the fact that the plaintiff's farm management activities were significant to the business. (R.281-282).

6

**III. Analysis**

At the outset, it merits mention that the accuracy of the plaintiff's tax return information is neither challenged nor disputed. Likewise, the plaintiff does not challenge the utilization of the first test to determine whether he was engaged in "substantial gainful activity" during the relevant time period; however, he vigorously challenges ALJ's method of calculation. Additionally, the plaintiff argues that the Commissioner has either "waived" any reliance on the second or third tests or by his decisional silence conceded their inapplicability to the facts of this case.

**A.**

The plaintiff presents no decisional authority for his waiver argument. Although the Supreme Court in *Myers v. Bethlehem Shipbuilding Corp.*, 301 U.S. 41, 50-51 (1938), imposed an unqualified exhaustion requirement in an administrative context, the Court has nevertheless recognized many exceptions, including *inter alia* in state judicial and administrative proceedings, *e.g., Patsy v. Board of Regents*, 457 U.S. 496, 500 (1982), and Social Security proceedings, *Sims v. Apfel*, 530 U.S. 103 (2000). As the Supreme Court observed in *Sims*,

> Where . . . an administrative proceeding is not adversarial, we think the reasons for a court to require [a litigant to seek relief elsewhere before bringing an action in federal court] are much weaker. More generally, we have observed that it is well settled that there are wide differences between administrative agencies and courts, *Shepard v. NLRB*, 459 U.S. 344, 351, . . . (1983), and we have thus warned against reflexively assimilating the relation of . . . administrative bodies and the courts to the relationship between lower and upper courts, *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 144 (1940) . . . .

7

*Sims v. Apfel*, 530 U.S. at 110; *see also Wilson v. Apfel*, 1999 U.S. Dist. LEXIS 16672, *4-7 (DKan. 1999) (court declined to recognize an administrative waiver doctrine in a social security appeal).

Moreover, Social Security Ruling ("SSR") 83-34 directs, "[unless] it is clearly established that the self-employed person is not engaged in SGA [7] on the basis of [test one], both the second and third SGA tests concerning comparability and worth of work must be considered." *See also* SSA Program Operating Manuel System § DI 10510.20.

### B.

In order to develop the record more fully in this case, following the court's remand the ALJ appropriately requested the plaintiff to submit his complete tax returns for the years 1995-2005. (*See* R.336-337.) These returns were reviewed by the ALJ. He charted the farm's annual profit (loss); considering the six year period surrounding the plaintiff's alleged onset date there, he concluded that there was a "rough parity" of profit (loss), and he determined that it had stayed at a "steady rate" even after the alleged onset date. (R.281-282.)

In his memorandum challenging this determination by the ALJ, the plaintiff argues that the agency's relevant evaluation guide for this determination, specifically 20 C.F.R. § 404.1575(c)(2), requires a comparison of the individual's average income before and after the alleged disability onset. Using this formula, the plaintiff argues, the farm's average annual loss for the period between January 1, 1995 and March 31, 2001 was <$9,174> ; whereas the annual loss during the

---

[7] "Substantial Gainful Activity"

post-onset date averaged <$16,751>. [8]  These increased post-onset losses from his farming activities, the plaintiff argues are "obvious, ... severe, ... and "clear[ly]" demonstrate that his post-onset farm-related work activities did not constitute substantial gainful activity.

On careful examination, this argument is also without merit. It is predicated on a belief that the second prong of the 20 C.F.R. § 404.1575(a)(1)(i) test must be determined exclusively by mechanical application of the raw profit (loss) data. The plaintiff suggests no authority to support this contention, and the undersigned is aware of none. Moreover, it is advanced as the sole appropriate analytical approach without an consideration of the data's nearness or remoteness to the alleged onset date. *See generally Rockaway Pix Theatre, Inc. v. MGM*, 1964 U.S.Dist. LEXIS 9717. *7 (EDNY, 1964). Likewise, it ignores the misleading nature of a statistical median based on a small data set with a large data range; it makes no attempt to make a statistical adjustment for the aberrant profit number in 1999, and it ignores completely other statistical vagaries inherent in the mean and dispersion of the data set he has chosen to use. *See generally Nat'l. Cottonseed Products Assn. v. Brock*, 825 F.2$^d$ 482, 488 (DDC, 1987); *Banque Worms, etc. v. Mellon Bank, N.A.*, 1992 U.S.Dist. LEXIS 5643, *10 (NDIll, 1992).

More directly, this argument by the plaintiff ignores the fact that he significantly changed his farming activities in September 1998 when he invested $332,694.00 in a poultry house and an

---

[8] The issue in this case is whether the plaintiff's farming/farm management activities during the relevant period were "substantial gainful activity" that precludes a finding that he was disabled before the expiration of his insured status. The issue is not whether he made a profit farming or whether he has the physical ability to engage in vigorous farming activities. "Rather, the Social Security Act requires [the court] to focus on whether [the plaintiff] has proved his 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment' 42 U.S.C. § 423(d)(1)(A)" *Petersen v. Chater*, 72 F.3$^d$ 675, 676 (8th Cir. 1995).

additional $71,470.00 in related poultry production equipment. (*See e.g.,* R.383.) In contrast, during the previous three tax years the plaintiff's farm activities included only minimal income related livestock he purchased for resale, and it included no income from the sale of raised products or raised livestock. (R.340,344,349.) As a direct consequence of his 1998 investment in a poultry house and other poultry production equipment, the plaintiff has annually reported significant income attributable to the raising of turkeys [9] and a similarly significant increase in his offsetting annual depreciation. [10] (R.363,381,418,442,468,500,335,525,332,554.)

Quite appropriately, therefore, the ALJ's analysis focused on the farm's profit (loss) for the most relevant time period (three years before and the three years after the alleged March 2001 disability onset date). It took into account the plaintiff's self-described day-to-day farm-related activities during the same most relevant six-year period. It took into account the fact that 1999 (the first full year of turkey production) was the only year in which the farm had a net operating profit for tax purposes. It took into account Social Security Ruling ("SSR") 83-34's recognition that there is often a significant lack of any direct correlation between a self-employed individual's profit (loss) and his business-related activities. It took into account the plaintiff's significant supervisory and

---

[9] The plaintiff's reported annual gross income derived from the sale of farm product/livestock are: $12,262 in 1998; $152,537 in 1999; $129,129 in 2000; $118,752 in 2001; $117,478 in 2002; $135,957 in 2003; $133,990 in 2004; and $113,734 in 2005. Additionally, he reported some minimal income derived from the sale of livestock bought for resale in the years 2002 through 2005.

[10] In addition to the poultry house and farm equipment purchased in September 1998, the plaintiff's most recent depreciation schedule shows subsequent farm-related purchases of a $31,000 pickup truck and a $1,900 computer in the Summer of 1999, twelve (12) horses for breeding in June 2001, and a $35,555 tractor and $7,400 manure spreader in the Summer of 2002. (R.443,469.) As a result, he was able to take an offsetting depreciation amounts of $32,183 in 1998, $64,052 in 1999, $57,889 in 2000, $48,730 in 2001, $50,119 in 2002, $53,666 in 2003, $48,664 in 2004, and $41,143 in 2005.

managerial responsibilities. And, as the ALJ described his conclusion, it recognized the "rough parity" of farm income (loss) over the six-year period surrounding both the plaintiff's alleged disability onset date and the expiration of his insured status.

The fundamental purpose of 20 C.F.R. § 404.1575(c) is to address the agency's concern with the "livelihood which [a self-employed individual gets] get from the business" before and after any alleged disability. *Peterson v. Chater*, 772 F.3$^d$ 765, 678 (8th Cir 1995). The ALJ, therefore, correctly chose not to rely on a mechanical application of the full ten years of tax return profit (loss) figures. Even in a rough sense, they did not reflect the plaintiff's farming/farm management activities either at the time of his alleged disability onset or at the time his insured status expired.

Manifestly, the plaintiff was not a farm landlord, as that term is used in the agency's regulations.[11] It is similarly evident that the plaintiff consistently represented each year "under penalty of perjury" that he "materially participat[ed] in the operation" of the turkey farm. (R.331-332,334-335,342-343,339-340,345,349,359,363,377,381,412,418,436,442,460,463,468,495,500,520,525,547,554.) Likewise, it is unquestionably the plaintiff's burden in this case to prove he was not engaged in substantial gainful activity on or before the expiration of his insured status at the end of June 2002. *See* 42 U.S.C. § 423(d)(2)(A); *see also McLain v. Schweiker*, 715 F.2$^d$ 866, 868-69 (4th Cir. 1983); *Hall, v. Harris*, 658 F.2$^d$ 260, 264-65 (4th Cir. 1981); *Wilson v. Califano*, 617 F.2$^d$ 1050, 1053 (4th Cir. 1980).

---

[11] A individual who "rent[s] farm land to another." 20 C.F.R, § 404.1575(b)(1).

11

The ALJ's post-remand decision sets forth his use of the two-part decisional framework required for a determination under 20 C.F.R. § 404.1575(a)(2)(i). He concluded that the plaintiff continued to engage in substantial gainful activity through the date he was last insured and, as outlined herein, that conclusion was based on the facts of this case and on substantial evidence. [12]

## C.

Even if it assumed *arguendo* that a proper application of the two-part analysis under 20 C.F.R. § 404.1575(a)(2)(i) would fail to establish a decisionally adequate basis to support a finding that the plaintiff was engaged in substantial gainful work activity at the time his insured status expired, such work activity is alternatively supported by other relevant evidence in the record, including the time devoted by the plaintiff to farming activities, [13] his responsibilities, [14] and his consistent acknowledgment of "material participat[ion]" in his turkey farm business from 1998 forward. [15] All of these activities are consistent with the activities of an "unimpaired individuals in the community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii). Alternatively, these activities are patently worth the relevant minimal

---

[12] The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). *See* 20 C.F.R. § 404.1520(a, (b).

[13] "three to four" hours each day. (R.236.)

[14] "the business end of it." (R.236-237.)

[15] *See* page 11 above.

12

Case 5:08-cv-00056-SGW-JGW   Document 24   Filed 07/20/09   Page 12 of 14   Pageid#: 90

amounts shown in 20 C.F.R. § 404.1574(b)(2) when considered in terms of their "value to the business." 20 C.F.R. § 404.1575(a)(2)(iii).

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. Substantial evidence supports the finding that before expiration of his insured status the plaintiff rendered services which were significant to the operation of the his turkey farm business;

3. Substantial evidence supports the finding that before expiration of his insured status the plaintiff's farming/farm management activities were "substantial gainful activity" within the meaning of the Act;

4. The issue in this case is not whether the plaintiff made a profit farming or whether he has the physical ability to engage in vigorous farming activities;

5. The plaintiff has failed to meet his burden of proving at the first sequential decisional step that he had not engaged in substantial gainful activity prior to the expiration of his insured status;

6. The plaintiff has not met his burden of proving his entitlement to a period of DIB; and

7. The final decision of the Commissioner should be affirmed.

## V. Recommended Disposition

13

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 17th day of July 2009.

/s/ *James G. Welsh*
United States Magistrate Judge